# Calhoun's Appeal in the matter of Bordley's Estate.

### *Liability of Executrix for* devastavit *of Husband.*

1. An executrix, who marries and survives her husband, is liable in equity to answer out of her own separate estate, for the *devastavit* of her husband, committed during coverture, in the exercise of her office as executrix: yet as an equitable rule, its application will be governed by the circumstances of each particular case.

2. Where a devisee, and her heirs and personal representatives after her death—who sought to charge the separate estate of the executrix for the *devastavit* of her husband—had known for twenty-five years that the husband was wasting and mismanaging the estate, without requiring a settlement of his accounts, and security, or his discharge from the trust, it was held that they were not entitled in equity to recover the losses sustained by the estate, from the separate estate of the wife. The aid of a court of equity will not be granted to those by whose fault it has become necessary.

APPEAL from the Orphans' Court of *Philadelphia county.*

This was an appeal by Samuel Calhoun, administrator of H. M. Ross, from the decree of the Orphans' Court, dismissing his petition; in which he prayed for a decree against Mrs. Elizabeth B. Gibson, surviving executrix of her father, John Beale Bordley, requiring her to pay to the estate of H. M. Ross the sum of money which appeared to be due, by the auditor's report, on an account which had been filed for Mrs. Gibson, by her husband, James Gibson, since deceased.

The facts of the case are very fully stated in the opinion of this court, the more prominent of which were the appointment of Elizabeth Bordley as executrix of the will of John Beale Bordley, in 1804; by which the income of $40,000 was given to Elizabeth, and the same sum to his daughter, Mrs. Ross, remainder to her children, as also one-half of his residuary estate; the

[Calhoun's Appeal.]

marriage of Elizabeth with James Gibson, in 1817; the death of Mrs. Ross, in 1829; the insolvency of Mr. Gibson; the filing of a bill in equity by the children against Mr. and Mrs. Gibson, for the principal of the annuity fund, and an account of the residuary estate, in which it was charged that Gibson was insolvent, and that the funds of the Bordley estate had been used by him and his wife for their own purposes; the filing of a petition in the Orphans' Court, in 1856, praying for a citation, directed to Mr. and Mrs. Gibson, requiring them to account for the residuary estate, under which an account was filed by him as "executor of Bordley's will, by intermarriage with his executrix;" the death of Gibson; the reference of this account to an auditor, before whom Mrs. Gibson appeared as. for the accountant; the insufficiency of Gibson's estate to answer the decree for the payment of the balance found by the auditor; all which was followed by this petition asking for a decree against Mrs. Gibson for the payment of this balance out of her annuity fund of $40,000, which had been secured by an ante-nuptial settlement as her separate estate, and which it had been decided could not be reached, to make good the claim of the children of Mrs. Ross.

The petition and answer in the court below raised the question of the personal liability of the executrix for the *devastavit* of her husband, to whom she was subsequently married—the effect of a former decree of the Circuit Court of the United States, dismissing a bill against the executrix, wherein a claim arising out of the same estate was at issue, and the legal or equitable discharge from liability resulting from the lapse of time and the *laches* of the petitioner or his predecessors.

The Orphans' Court (THOMPSON, P. J.), on hearing, dismissed the petition of Mr. Calhoun, who thereupon removed the case into this court, assigning here the decree of the court below for error.

The case was argued by *E. Spencer Miller*, for the appellant, and by *R. C. McMurtrie*, for the appellee.—For the appellant it was argued, that the law was settled that where an executrix, as in this case, marries after she has assumed the burden of the office, she is liable for her husband's *devastavit*: citing Adair *v.* Shaw, 1 Scho. & Lef. 258; Bellew *v.* Scott, 1 Str. 440; Benyon *v.* Collins, 2 Br. Ch. 523; 1 Salk. 306; Roper on Legacies, 2d ed. 196, 197; Toller on Ex. 358; 6 Law Lib. 44.

For the appellee it was answered, that she was not liable, because,

1. She had received no part of the moneys charged in the account filed by her husband, but they were received by him without any power on her part to prevent it, and that the real wrongdoer alone is liable in such cases: Price *v.* Morgan, 2 Ch.

Cases 217; Mounson *v.* Borem, Cro. Ch. 519, 3d resolution; Horsey *v.* Daniel, 2 Lev. 145; Benyon *v.* Collins, 2 Bro. C. C. 523; Clough *v.* Dickerson, 8 Sim. 594; 3 M. & Cr. 497. The apparent contradiction in the cases being solved by considering, 1, that at law the executor became a debtor as to creditors, unless he cleared himself by showing administration, the remedy being in form *ex delicto* for the misuse of an agency; and, 2, that in equity it was regarded as a trust, for the breach of which the wrongdoer was answerable. At law the wife was joined, and liable, because it was her agency, conducted by her husband; whereas in equity the substance was regarded, and the technical reasoning discarded. With us, executors are always regarded as trustees, and dealt with as such.

2. Because there was a former proceeding in 1830 for this very claim, in which there was a decree dismissing the bill as to Mr. Gibson; that the account then included these items; that they were not expressly withdrawn, and the decree on the report in that case, unexcepted to by either party, was paid and satisfied: citing Muirhead *v.* Kirkpatrick, 2 Barr 425; Carville *v.* Garrigues, 5 Barr 152; Simes *v.* Zane, 12 Harris 242; Corbet *v.* Evans, 1 Casey 310; Lansing *v.* Eddy, 1 J. C. R. 49; Benker *v.* Elkins, Id. 465; Simson *v.* Hart, Id. 98; Dodge *v.* Strong, 2 Id. 228; Foster *v.* Wood, 6 Id. 87; McVickar *v.* Wolcott, 4 John. 510; Ricardo *v.* Garcias, 12 Clark & Fin. 369; Behrens *v.* Pauli, 1 Keen 456; Samuda *v.* Fustaldo, 3 Bro. Ch. Cases; Mitford 253, 256; 2 Dl. Ch. Pr. 184.

3. Because the claim is barred by lapse of time, thirty-two years having gone by since the last receipt sought to be recovered; and,

4. It was argued that the account filed by Mr. Gibson, without her knowledge, was not conclusive against her, and that it was litigated by her before the auditor as his executrix.

For the appellant it was said, in reply,

1. That to the 1st point above mentioned, the answer is contained in the cases cited to show the liability of a *feme* executrix who afterwards marries. That she voluntarily conferred on him the power which he afterwards misused, and that her knowledge or participation was therefore of no consequence.

2. As to the suit in the Circuit Court, which was presented as a bar here, it was replied, that while the value of the plea is not denied as a general rule, at law or in equity, where the claim is on an entire contract, which cannot be severed, it does not apply to cases where the demands are distinct and severable, and where it appears by the record, or by proof *aliunde*, that one or more of the demands was not included in the judgment or decree: Croft *v.* Steele, 6 Watts 373; 2 Sm. Lead. Cases 669; Logan *v.* Caffrey, 6 Casey 200; Kelsy *v.* Murphy, 2 Casey 80; Cummings

[Calhoun's Appeal.]

*v.* Colgrove, 1 Casey 151; Kane *v.* Fisher, 2 Watts 246; Carmony *v.* Hoover, 5 Barr 308.

The claim in the Circuit Court was against a trustee for the principal of an annuity bequeathed by will, to which Mrs. Ross's children were entitled, and was severable in law or equity from a claim against an executrix for a *devastavit* of the residuary estate, which the administrator of Mrs. Ross alone can recover, and who was no party in the Circuit Court.

3. As to the discharge by lapse of time, it was answered, 1. That the cases above cited establish the rule that the remedy against a wife for the *devastavit* of her husband, does not exist until after his death : citing also McQueen on Husband and Wife 1224; Pannell *v.* Taylor, 1 Turn. & Russ. 96; Dl. Ch. Pr. 191; and Williams on Ex. 1835. 2. Nothing could have been recovered of her then out of her separate estate, and she never had anything else; but now it is released from the trust, has become her own property, and available for this claim for the first time. There is no statute of limitations to bar it, and there was no *laches.* 3. The presumptions from lapse of time that were declared to arise in Wilkinson's Estate, 1 Par. 153, cannot arise here; but if they do, they have been rebutted. 4. She has not been injured by the omission to proceed against her husband, for he was insolvent then, and continued so until his death. If, as is admitted, she attempted to obtain delay and indulgence for her husband in his lifetime in respect to the annuity fund, she is now estopped from alleging that she was injured by the delay.

4. As to the conclusiveness of the account filed in this case, and propriety of the remedy adopted to reach Mrs. Gibson, it was argued that as assets in the hands of a *feme covert* executrix are not divested out of her by marriage, though the husband may control their administration, it follows, that upon his death, her powers, duties, and liabilities return as before, with the additional burden of his *devastavit :* citing Went. 370; Williams 570, 828; Co. Lit. 351; Thompson *v.* Pinehill, 11 Mod. 175; 1 Scho. & Lef. 262; Beaumond *v.* Long, Cro. Car. 208, 227; Toller on Ex. 241; Went. 371; Mounson *v.* Bowen, Cro. Car. 519; Bellew *v.* Scott, Str. 440. A decree might be had in equity on a bill against both, and execution at his death : Williams 1836.

In this state, a petition in the Orphans' Court is analogous to a bill in equity, and in this case a petition was filed against both, served, and answered by an account headed "Account of James Gibson, who became executor of John Beale Bordley, by intermarriage with Elizabeth Bordley, who was surviving executrix, &c."

This was equivalent to a bill against both, and should have been followed by a decree against both. Before the auditor she appeared not as executrix of her husband, but of her father, with the restraint of coverture removed, vouching the account

and resisting surcharges of interest, &c., until the decree; and then, when we ask to have it properly entered, she avers, for the first time, that it does not in any way affect her. Besides this, the accounting of her husband binds her just as his *devastavit* did: see Williams on Ex. 869.

The opinion of the court was delivered, May 6th 1861, by

WOODWARD, J.—John Beale Bordley died in 1804, leaving a large estate and a will, whereof his daughter, Elizabeth, was made a co-executrix. The other executors renounced, and died before 1817, leaving Elizabeth his sole surviving executrix. At that time all the testator's debts and legacies had been paid, but large sums of money remained due to his estate and uncollected, which belonged to his residuary estate. His two daughters, Elizabeth and Henrietta Maria Ross, were the devisees of the residuary estate.

In 1817 Elizabeth married James Gibson, having first joined him in making a settlement upon herself by a conveyance to trustees, of a portion of the residuary estate under her father's will, sufficient to produce her an annuity of $2400. And, after her marriage to Gibson, a principal sum of $40,000 was put out and invested, in order to produce a like annuity of $2400 for Mrs. Ross. Gibson assumed the administration of Bordley's estate after his marriage to the executrix, and carried it on until 1856, when he was cited to a settlement of his account. He filed an account as " executor of John Beale Bordley, by intermarriage with Elizabeth Bordley, who was the surviving executrix under the will of said John Beale Bordley, deceased." The account was referred to an auditor, and pending the audit Gibson died. His widow appeared by counsel before the auditor, vouched the account, and resisted successfully the attempt to surcharge the accountant with compound interest. The result was a balance against him of $23,041.88½, which the court confirmed. Gibson made an assignment for the benefit of creditors a few years before his death, and died insolvent. The administrator and heirs of Mrs. Ross having claimed to recover the above balance from Mrs. Gibson, who survives her husband, the Orphans' Court decided against them, whereupon they appealed to this court.

The question which is thus presented for our consideration is, whether an executrix who marries and survives her husband, is liable to answer out of her own estate for the *devastavits* of the husband committed during coverture in the exercise of her office as executrix. By the marriage, Gibson became entitled to administer in his wife's right. It is one of the donations of power which marriage makes to the husband. The reason assigned in the books for it is, that it is for his own safety, lest she misapply

the funds for which he would be liable. As incidental to the right of administration, he has the power of disposition over the personal estate vested in his wife as executrix or administratrix, and may release debts owing to the estate of the testator or intestate.

By the death of Gibson she was restored again to her full rights and liabilities, as sole surviving executrix. For any *devastavit* committed by her before or after her coverture, she would be unquestionably liable, but the *devastavit* in this case was by her husband, and the question is whether, in a court of equity, she is chargeable with it. It is material to observe, that the parties who seek to charge her are not creditors of her father's estate, but the heirs and personal representatives of a principal devisee and legatee. The leading case on this subject is Adair *v.* Shaw, 1 Scho. & Lef. 243, which was the case of administration committed to a woman already covert. The goods were wasted during coverture—the husband died, and this was a suit in equity by legatees against Mrs. Shaw, the administratrix. Lord Redesdale held her responsible, and the assets of Mr. Shaw also, for whatever came into the hands of himself or his wife during coverture, except so far as he left assets in *specie* of the testator after his death. He said, that at law she would be liable to creditors for her husband's waste, but not to residuary legatees, for no action at law could be brought on their behalf. He set aside the *dictum* of Lord Thurlow, in Benyon *v.* Collins, 2 Bro. C. C., that a wife was not responsible for waste during coverture, and declared that "all the authorities clearly lay it down that though waste during coverture is the act of the husband, yet it is an act for which the wife, after the determination of the coverture, is responsible, because, according to the language of the cases, it was her folly to take a husband that would so misconduct himself." I do not think the authorities cited by his lordship sustain his statement of doctrine, and the "language of the cases" to which he refers is applied (and indeed admits of no other application) to cases like the present, where a woman takes administration before she marries, instead of cases like that of Mrs. Shaw, where administration was granted after coverture: Ross's Husband and Wife 193; 2 Williams' Executors 1667. I agree with counsel, that the only case directly in point is that of Vaughan *v.* Thompson, in note to 2 Dyer's R. 210. It is not long, and I will transcribe it. "Vaughan *v.* Thompson and his wife, who was executrix of her first husband, and upon a *devastavit* returned, a *capias ad satisfaciendum* issued against both *de bonis propriis.* The husband was in the Fleet, and the wife was brought into court by *habeas corpus*, and it was prayed that she might be committed to the Fleet also. Anderson moved that she should not, for if she and her second husband had been joint executors,

or if she had not proved the will, or administered during her widowhood, she should not be charged in *devastavit*, for then it was the act of the husband; yet she was committed to the Fleet, for it appears that she was executrix, *and that she administered when she was sole, and then the devastation of the husband shall be said the act of the wife.*" See also Clough *v.* Bond, 3 Mylne & Craig 497.

If Adair *v.* Shaw be authority for charging a post-nuptial executrix or administratrix, who survives her husband, with his *devastavit*, it is safe to conclude that a woman who has assumed administration before she marries will be liable if she survive her husband, for his *devastavit* during coverture, because it was her folly to take a husband who would misconduct himself. True, it is the law that gives him the right to waste the goods, but the woman gives him the opportunity. The law compels no executrix to marry, but it sets before her the legal consequences of her deciding to do so. She has no right to complain of the legal consequences of her voluntary act.

But though the rule in equity be as is here stated, yet because it is an equitable rule its application will be governed by all the circumstances of each particular case. From 1817 to 1856, Mrs. Gibson was, as has been already stated, under the disabilities of marriage. During these thirty-nine years Mrs. Ross and her representatives knew that Gibson was legally entitled to administer the trust, and was actually administering it. They had whatever remedies our legislation afforded them for compelling settlements, obtaining securities from him, and of ousting him from the trust. Nor were they ignorant of the mismanagement, for in 1830 we find them in the Circuit Court of the United States, by their bill in equity, complaining that Mrs. Ross's annuity fund aforesaid had not been assigned and accounted for, and calling on them, Gibson and wife, " to annex to their answer true, perfect, and accurate accounts of the manner in which the said estate and property have been disposed of by them, or either of them, at any time since the death of the said John Beale Bordley."

After the answer to this bill was put in, the plaintiffs excepted that the defendants had not answered as to the " whole estate, real and personal, of the said John Beale Bordley, and what has become of the same," which brought out an amended answer, and certain schedules of assets. Mrs. Gibson denied all agency or participation in putting out the annuity fund of $40,000 belonging to Mrs. Ross, and all agency or participation in administering her father's estate, so far as the same had come under the control of her husband.

After these pleadings on the 20th of October 1845, the Circuit Court dismissed the plaintiff's bill in so far as it concerned Mrs. Gibson's separate estate under the marriage settlement of 1817,

but retained the cause for further proceedings against her husband. In 1848, it was referred to Thomas Dunlap, Esq., as a Master, to settle and report the amount due to the complainants and other children of Mrs. Ross. An account of the annuity fund was stated, resulting in a balance on the 19th of February 1847 of $35,811.58, which was decreed to the plaintiffs, and on the 17th of October 1855, that decree was satisfied of record by their counsel.

We cannot agree with the counsel for the appellee that these proceedings may be pleaded as a former recovery in bar of the present suit for the bill—the account rendered and the decree were manifestly all founded upon the annuity fund of Mrs. Ross and nothing else. That is not in litigation now. The present controversy has regard to the residue of the testator's estate. Of this the Circuit Court could not have had jurisdiction, for our law committed administration of it to our own Orphans' Court. True it is, the language of the bill, and of the exception to the answer, was large enough to cover the whole estate; but we must look not merely to the forms of the suit, but to the subject-matter of the adjudication, to define the effect of the record. Receiving it with this necessary limitation, we perceive that what is in controversy now could not in point of law have been adjudicated in that suit, and was not in point of fact. *Res adjudicata*, therefore, is not a good answer to the present suit.

But that record has great weight in this cause in another way. From the institution of the suit in the Circuit Court to the death of Gibson was twenty-six years. There was his assignment for the benefit of creditors, to admonish the plaintiffs of his insolvency, and there were the facts alleged in their bill to show them that he was wasting the estate of their ancestor. They knew that the law tied the hands of his wife, and yet they stood by for that long period and allowed him to squander their estate. They could have arrested his career of waste and mismanagement. His wife could not.

When they come into equity, therefore, to charge her with the consequences of their own inactivity, they are not, I agree, barred by the Statute of Limitations, for that would not begin to run in her favour until the death of her husband; but they are met by such maxims as these: No man is entitled to the aid of a Court of Equity when that aid becomes necessary by his own fault. *Qui tacet consentire videtur. Vigilantibus et non dormientibus æquitas subvenit.* A chancellor, though he recognises the sharp rule which obliges the surviving executrix to answer for the misconduct of her husband, will look at all the circumstances of the case before he applies it, and will be particularly careful to see that who seeks equity has done equity. Had there been ignorance of facts or legal disabilities to account for

3 Wʀ.—15

[Calhoun's Appeal.]

the extraordinary neglect of legal remedies on the part of the appellants, their inaction might have been excused, but nothing is shown or suggested by way of excuse. It appeared to the Circuit Court inequitable to subject Mrs. Gibson's separate property to liability for the defaults of her husband in respect to the annuity fund of Mrs. Ross—it appears to us equally inequitable to require her to repair, at this late day, the losses which other parts of Mrs. Ross's estate sustained at the hands of her husband.

The attempt to conclude her on the ground that she appeared before Auditor Brewster, is abortive. She appeared there in behalf of her husband's estate, and to settle his account—not her own. Whilst she is concluded, as the personal representative of her husband, by the event of the audit, it does not touch her right to defend her separate estate.

The decree of the Orphans' Court is affirmed.